DANIEL POTTER *vs.* BOSTON LOCOMOTIVE WORKS.

A railroad corporation purchased two locomotive engines and gave their promissory notes therefor; after part of which had been paid, they executed an absolute bill of sale of the engines to the manufacturers, taking back an agreement to sell the engines to them upon payment of the rest of the notes, and to allow them the use of the engines meanwhile. The engines were formally delivered to the manufacturers, but remained in the actual possession of the railroad corporation, and the agreement was not recorded.  Afterwards a new agreement was substituted, by which the manufacturers leased the engines to the railroad corporation, and agreed to sell and transfer them upon being paid the amount remaining due.  *Held,* that the bill of sale was void as against creditors of the railroad corporation; that the bill of sale and contemporaneous agreement constituted at most only a mortgage, so that the property was still liable to attachment against the railroad corporation; and that the subsequent agreement gave the manufacturers no additional right in the engines.

REPLEVIN of two locomotive engines taken by the defendants from the plaintiff, who claimed to hold them under attachments at the suit of creditors of the Newburyport Railroad Company

The replevin was dated July 22d 1856. The answer denied any attachable interest in the railroad company, and set up property in the defendants.

At the trial in the court of common pleas, before *Bishop*, J., there was evidence of the following facts: The Newburyport Railroad Company in August 1854 bought the engines of the defendants for $15,000, and gave six promissory notes therefor, payable with interest at from six to ten months. The first note was duly paid. On the 19th of March 1855, the second and third notes, not having been paid at maturity, were renewed, and the railroad company and the defendants respectively and simultaneously executed the bill of sale marked A and the agreement marked B, which are in the margin; * and the engines were formally delivered to the defendants, but never actually removed from the premises and control of the railroad corporation. The papers thus executed were immediately after their execution submitted by the defendants to their counsel, by whose advice

---

* A.

Boston Locomotive Works bought of the Newburyport Railroad Co

One Locomotive, called Yankee,

One do. " Newburyport,

<div style="margin-left:2em">With tenders, . . . . . $13,138 43</div>

<div style="margin-left:4em">Newburyport, March 19, 1855.</div>

<div style="margin-left:2em">Received payment,</div>

<div style="margin-left:4em">Newburyport Railroad Co., by C. J. Brockway, Pres't.</div>

B.

Whereas the Newburyport Railroad Company have given to the Boston Locomotive Works five notes, payable to the order of said Newburyport Railroad Company, [specifically describing the three notes not yet due, and the two given in renewal of those due and unpaid.] Now therefore the said Boston Locomotive Works agree with the said company, that if they shall pay said notes at maturity, then said Boston Locomotive Works will sell and convey to the said Newburyport Railroad Company two locomotives, called the Yankee and Newburyport, with their tenders, being the same now used by said company, and until default of payment as abovesaid, the Newburyport Railroad Company may use the same free of charge. The above specified locomotives and tenders to be kept in good repair, at the expense of said railroad company.

Newburyport, March 19, 1855

<div style="margin-left:4em">Boston Locomotive Works, per Joseph F. Morton.</div>

the instrument in the margin marked C* was executed in duplicate by the defendants and the railroad corporation. On the 14th of July 1855 the notes described in paper B, with interest added, were exchanged for new ones, secured by bonds of the railroad corporation and mortgage of their railroad, which were still held by the defendants.

The plaintiff requested the court to instruct the jury, as matter of law, that the papers A, B and C constituted a mortgage or collateral security for the debt, and therefore the Newburyport Railroad Company, at the time of the attachment by the plaintiff, had an interest in the engines which could be reached by their creditors; and that if the paper A was to be taken as a bill of sale, there was no consideration for it, and it was void

---

\* C.

Whereas the Boston Locomotive Works, a corporation established by the laws of Massachusetts in the city of Boston, are the owners of two locomotive engines, called the Yankee and the Newburyport, which said engines they have agreed to lend to the Newburyport Railroad Company, and have also agreed with said railroad company to sell the same to them hereafter, upon the terms and conditions hereinafter set forth, viz :

The said Boston Locomotive Works hereby agree with said Newburyport Railroad Company, that they will lease to them the aforesaid locomotives, on condition that said railroad company shall take proper charge of them, and keep them in good repair, and they further agree that they will sell the same to them hereafter, for the sum of thirteen thousand one hundred and thirty eight dollars and forty three cents, which said sum is to be paid as " [is stipulated in said notes.]

And upon the payment of each and all said sums, the said Boston Locomotive Works agree to sell, convey and transfer to said railroad company the aforesaid locomotives; that until said sums are paid, the aforesaid locomotives shall be the property of said Boston Locomotive Works ; and in case the payments are not made at the times aforesaid, then said Boston Locomotive Works may take said locomotives, and dispose of them as they shall see fit.

In testimony whereof the said Newburyport Railroad Company, by their president, and said Boston Locomotive Works, by their treasurer, he being duly authorized so to act, have become parties hereto, and said president and treasurer have annexed the seals of said corporations, as well as subscribed their own hands this nineteenth day of March, in the year eighteen hundred and fifty five.

Newburyport Railroad Co., by C. J. Brockway, Pres't. [Seal.]

Boston Locomotive Works, by Daniel F. Child, Treas. [Seal."

Witness, James D. Martin.

against creditors.   The court declined to do this ; and left the
matter to the jury, instructing them that, if they should find the
paper A was an absolute bill of sale and the paper C was only
a warrant to sell upon conditions. then the railroad company
had no interest in the engines, which their creditors could reach
by attachment; but if they should find that the object and de-
sign of the papers A and C were to give the defendants collat-
eral security for their debt, (and in passing upon this question
they were to look at all the circumstances,) then there was an
interest in favor of the Newburyport Railroad Company in
these engines, which their creditors could reach by attachment ;
and that if there was no consideration for the bill of sale, it was
void as against creditors.   The jury returned a verdict for the
defendants, and the plaintiff alleged exceptions.

*O. P. Lord & E. F. Stone*, for the plaintiff.

*W. Brigham*, for the defendants, cited *Flagg* v. *Mann*, 14
Pick. 467 ; 1 Pow. Mortg. 137 ; 4 Kent Com. (6th ed.) 147 ;
*Brown* v. *Dewey*, 2 Barb. 28 ; *Baker* v. *Thrasher*, 4 Denio, 493;
*Reading* v. *Weston*, 7 Conn. 143 ; 2 Cruise Dig. tit. 15, *c.* 1,
§ 20 ; *Russell* v. *Southard*, 12 How. 139.

DEWEY, J.   The locomotive engines, the subject of the pres-
ent controversy, were originally the property of the defendants,
a manufacturing corporation, supplying such articles to those
who had occasion for them.   In the ordinary course of business,
the Newburyport Railroad Company became the legal owners
of them by a purchase from the defendants on the 14th of
August 1854, giving their notes therefor, payable at a future
day.   The first of these notes had been duly paid at maturity.
The others were outstanding, and some of them were overdue.
On the 19th of March 1855 the relations of the parties were
that the railroad company were the absolute owners of the loco-
motive engines, and the defendants were then *bona fide* creditors,
as holders of certain notes taken in payment of the engines.
At that date two instruments were executed by these parties ;
one by the railroad company, marked A in the documents ap-
pended to the bill of exceptions, and the other by the defend-
ants, marked B.   The effect of these two instruments was to

convey the engines to the defendants as collateral security for the unpaid notes held by them. The form was not the more usual one, but one frequently adopted in making mortgages of real estate, a sale absolute in form by one instrument, and a defeasance by another, executed at the same time, and making part of the same transaction. It was a mere conveyance in mortgage, and as such, if properly recorded, would be good and effectual to secure the mortgagee. The effect, however, of such mortgage would be to leave the property subject to attachment for the surplus of its value above the debts for which it was mortgaged. But the defendants did not record this mortgage. They purposed to hold their security in another form, and the parties afterwards executed another instrument, marked C. At what precise time that paper was executed does not appear, but it was subsequently to the execution and delivery of the papers on the 19th of March, although apparently bearing that date. In this latter instrument, the parties assume the locomotive to be the absolute property of the defendants, and the agreements of the defendants, and all their stipulations, are based upon that hypothesis. This form of contract, as found in paper C, of a conditional sale and a lease of the engines, the defendants might well have adopted as an original arrangement with the railroad company, while the defendants were the absolute owners, and before the property had become vested in the railroad company by an actual purchase from the defendants. But this was not the state of the property. It had been sold absolutely, and without reserving any lien thereon, to the railroad company in August 1854, and has since been in their possession and use, as their property. Such being the case, it was not competent to deal with the same as the property of the defendants in July 1855, unless, by some legal mode of conveyance, the title had passed from the railroad company to the defendants prior to that time. The only mode by which it had passed was by the instrument A, before referred to. But that was on its face an absolute sale of the engines by the railroad company to the defendants, and, as is conceded, was made without any consideration paid therefor by the defendants, and was therefore void

and inoperative as against the creditors of the railroad company. It became valid only by reason of the defeasance B then given back by the defendants, and thus constituting it a mortgage, and leaving the interest of the mortgagor attachable by his creditors. It will not sustain a legal right in the defendants to the property, to withdraw the instrument B, because instrument A would be ineffectual without B, as it would transfer the property of the railroad company without any consideration, property which had been paid for, partly in cash paid already in discharge of notes, and partly in notes of the railroad company which the defendants then held, and which they might enforce against them, and satisfy out of any other property of the railroad company. Nor does it change the legal aspect of the case, that the instrument C was executed and apparently designed as a substitute for paper B. The parties were not in a situation to give effect to it as an original transaction. The debt or liability of the railroad company to pay the balance of their notes given for the engines remained, not only after execution of paper B, but also after the execution of paper C. Extended notes were given, but for the same liabilities as previously existed. The previous dealings of the parties, the actual payment of a part of the purchase money, and the retaining of the notes of the railroad company, are inconsistent with the hypothesis that at the time of the execution of the bill of sale A the property in the engines was to pass absolutely to the defendants. We do not see how paper C can aid in establishing a legal title in the defendants, if they were not the actual owi ers of the property stipulated to be conveyed and leased by that instrument. The railroad company might as well have executed such a paper as A, and received back such a paper as C from the defendants, embracing any other property of theirs, as these engines. The result of sustaining this conveyance, upon the face of these papers and the evidence before us, would be to sanction a mode by which the provisions of the registry law as to personal property might easily be avoided. The debtor would only have to make an absolute bill of sale of his personal property, or any articles thereof, to his creditor, and take back a con

tract to sell him the same upon payment of the same sum as the amount of his debt, stipulating for a lease until the sum should be paid, if such were held to be the law.   The character of the transaction, as the case is developed in the bill of exceptions, was giving security for the notes given as the purchase money of these locomotive engines.   The difficulty in the defendants' case is, that the property had vested in the railroad company by sale to them in August 1854.   It had passed by an absolute sale and upon a good consideration.   It was not to be devested, as respects the rights of creditors, but by a valid reconveyance. It was not competent for the defendants, unless the property had previously been revested in them by a valid conveyance to that effect, to assume the relation of absolute owners of the property, and as such to make a conditional sale, reserving to themselves all the rights of an owner to stipulate to pass the legal title only upon payment of a sum stipulated to be paid therefor. As already stated, the execution of the paper A by the railroad company, without a surrender by the defendants of the notes given for the purchase of the engines, was of no avail against the creditors of the railroad company, and paper A only has legal force and effect as connected with some other instrument; as connected with B, it constituted a mortgage; and the substitution of paper C did not change the character of A as a conveyance, which, if valid at all, must be so as passing the property for collateral security.   The court are of opinion therefore that the instructions to the jury were erroneous.

*Exceptions sustained.*